```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ROBERT NICHOLAS VENEZIA,

                Petitioner,                    MEMORANDUM & ORDER
                                               06-CV-0524 (JS)
        -against-

GARY GREENE,

                Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:     Robert Nicholas Venezia, pro se
                    00 A 0359
                    Great Meadow Correctional Facility
                    PO Box 51
                    Comstock, NY 12821-0051

For Respondent:     Marcia R. Kucera, Esq.
                    Assistant District Attorneys, Suffolk County
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, New York 11901
```

SEYBERT, District Judge:

Pending before the Court is Robert Nicholas Venezia's ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons below, Venezia's petition is DENIED in its entirety.

BACKGROUND

Petitioner was charged with stabbing his stepmother, Mary Venezia to death in the early morning of August 31, 1998. At trial, the prosecution presented evidence that Petitioner attacked his stepmother in the den of their residence with a knife taken from a knife rack in the kitchen. After repeatedly stabbing his stepmother, Petitioner cleaned the victim's blood that had dripped

from the knife and Petitioner's hand onto the kitchen floor with a towel. Petitioner then cleaned his hands, changed out of his clothes, and took money from the victim's wallet. Thereafter, Petitioner left his residence and drove to his uncle, Dennis Venezia's ("Dennis") home.

While Petitioner was at Dennis Venezia's home, Rocco Venezia, another paternal uncle, called the Suffolk County Police Department to report an incident at Petitioner's residence. The officers who responded to the call reported finding the victim in the den. After speaking with Rocco Venezia, a dispatcher from the Suffolk County Police Department called the Nassau County Police Department and requested that officers from Nassau County report to Dennis' residence. The same dispatcher testified that he then called Dennis Venezia, who was frantic and asked whether the victim was dead or alive. The dispatcher asked Dennis whether Petitioner was at Dennis' residence; when Dennis responded affirmatively, the dispatcher asked to speak with Petitioner. Petitioner took the phone and told the dispatcher that he had been freebasing and doing drugs the night before, and had driven around for a few hours after freebasing, finally arriving at his uncle's house. Petitioner further stated that he could not remember much of what had happened and did not know why he had blood stains on him. The dispatcher's call ended when officers from the Nassau County Police Department arrived at Dennis' home and advised the dispatcher that they had

2

taken Petitioner into custody.

While the Nassau County Officers were at Dennis' residence, Suffolk County Police Officers were investigating the crime scene at Petitioner's home. After securing two search warrants, the officers discovered drug paraphernalia containing cocaine residue inside Petitioner's room.

Officer John F. Carney from the Nassau County Police Department testified that he responded to Dennis' home. Officer Carney found Petitioner in the kitchen and noticed that Petitioner's shirt was stained with blood. Petitioner was calm and cooperated with the officers. After the officers handcuffed Petitioner and placed him in the backseat of their vehicle, Officer Dorothy Gentile asked Petitioner if he needed medical attention. Petitioner said no, but stated that he had used cocaine at approximately 4:00 a.m. that morning. Petitioner later told Detective Phil Greco from the Nassau County Police Department that he had been freebasing all night, he remembered being home along with his step-mother, and recalled that his father had left at approximately four o'clock. Petitioner also remembered taking a shower and then driving on the Southern State Parkway with blood all over him. However, Petitioner maintained that he had blacked out and thus could not recall anything else that occurred at his home. Petitioner was thereafter taken to the First Squad of the Nassau County Police Department, where he was photographed and had

an opportunity to speak with his attorney. Petitioner was then turned over to detectives from the Suffolk County Police Department who had inspected the crime scene.

Nassau County Detective Samuel DeJesus testified that he left the Nassau County 1st Squad to take Petitioner to the Suffolk County Police Department. Detective DeJesus read Petitioner his rights from a rights card while the two were in the Detective's car. After having been told of his constitutional rights, Petitioner spontaneously told the police that he was "really sorry this happened," and he "didn't mean for this to happen." (Tr. at 451.)

At trial, Petitioner attempted to establish the affirmative defense of extreme emotional disturbance. Petitioner presented the testimony of Dr. Sanford Drob, who testified that he believed Petitioner suffered from an extreme emotional disturbance. (Tr. 1041). Dr. Drob stated that Petitioner's emotional state was caused by a combination of psychological deficits, cocaine use, and the shock and anger towards his stepmother when she caught him using cocaine and threatened to inform his father and have Petitioner thrown out of the house. The defense presented evidence that Petitioner had reason to believe the threat would be carried out due to his poor relationship with the victim.

In rebuttal, the prosecution presented the testimony of Dr. Robert Berger, a licensed psychiatrist, who testified that

Petitioner did not act under an extreme emotional disturbance. Dr. Berger testified that Petitioner did not have a negative relationship with his stepmother during Petitioner's adolescence, as Petitioner claimed, and Petitioner received support from his father. According to Dr. Berger, the crime scene evidence was not consistent with an extreme emotional disturbance. Id. at 1197, 1241-1246. Dr. Berger stated that the following evidence indicated that Petitioner was not acting under extreme emotional disturbance: the gap in time between the confrontation and the homicide, Petitioner's decision to clean the murder weapon and return it to the knife block, and the fact that Petitioner was not exhausted or remorseful after the murder, which usually occurs when someone acts under an extreme emotional disturbance.

On December 1, 1999, following a bench trial, Petitioner was convicted of Murder in the Second Degree and sentenced to eighteen years to life imprisonment. Petitioner appealed his conviction to the Appellate Division, Second Department. On appeal, Petitioner argued that (1) the defense proved, by a preponderance of the evidence, that Petitioner acted under an extreme emotional disturbance; (2) the trial court erred in allowing the prosecution's psychiatric expert to give his opinion regarding the Petitioner's credibility and his opinion on the crime scene evidence; and (3) Petitioner's sentence was harsh and excessive.

On September 27, 2004, the Appellate Division affirmed Petitioner's conviction. The court held that Petitioner did not establish his affirmative defense by a preponderance of the evidence, the sentence was not excessive, and his remaining arguments were without merit. People v. Venezia, 781 N.Y.S.2d 914, 914 (2d Dep't 2004). On January 3, 2005, the New York Court of Appeals denied Petitioner's application for leave to appeal. People v. Venezia, 4 N.Y.3d 768, 825 N.E.2d 144, 792 N.Y.S.2d 12 (2005).

On January 5, 2006, Petitioner filed the instant petition for a writ of habeas corpus. Petitioner claims that (1) the trial court erred in holding that extreme emotional disturbance was not proven by a preponderance of the evidence; (2) the prosecution did not prove guilt beyond a reasonable doubt; (3) the prosecution's expert lacked the necessary qualification to testify as he did; and (4) Petitioner's sentence is harsh and excessive.

<u>DISCUSSION</u>

I. <u>Standard of Review</u>

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of

6

the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially distinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (citing Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. (citing Williams, 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

II. Petitioner's Claims

   A. Legal Sufficiency Claim

Although unclear, Petitioner's habeas corpus petition appears to argue two separate legal sufficiency claims. First, Petitioner maintains that the evidence at trial did not support a murder conviction. According to Petitioner, someone else may have murdered his stepmother, or his stepmother may have committed suicide. Second, Petitioner argues that he acted under extreme emotional disturbance and thus should have been convicted of Manslaughter in the Second Degree.

On appeal, the Appellate Division rejected Petitioner's argument that he should have been convicted of Manslaughter in the Second Degree and not Murder in the Second Degree. The state court found that "[c]ontrary to the defendant's contention, he did not establish, by a preponderance of the evidence, the affirmative defense of extreme emotional disturbance to the charge of murder in the second degree." People v. Venezia, 10 A.D.3d 736 (2d Dep't 2004).

"The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt

of every fact necessary to constitute the crime with which [the Petitioner] is charged.'" Einaugler v. Sup. Ct of the State of N.Y., 109 F.3d 836, 840 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970)). Petitioner is only "entitled to habeas corpus relief if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979). The evidence must be viewed "in the light most favorable to the prosecution." Id. at 319. When challenging the sufficiency of the evidence in a state criminal conviction, a petitioner "bears a heavy burden." Einaugler, 109 F.3d at 840. Additionally, "the government receives the benefit of having all permissible inferences drawn in its favor." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (citing United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995)).

Under the New York Penal Law, "[a] person is guilty of murder in the second degree when:

> 1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:
>    (a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them

9

to be.

N.Y. Penal Law §§ 125.25. The affirmative defense of extreme emotional disturbance must be proven by a preponderance of the evidence. N.Y. Penal Law § 25.00; see also James v. Smith, No. 05-CV-4756, 2008 U.S. Dist. LEXIS 50073, at *38 (E.D.N.Y. June 30, 2008).

First, the Court finds that there was sufficient evidence upon which a rational fact-finder could have convicted Petitioner for Murder in the Second Degree. The evidence at trial showed that Petitioner took a knife from his kitchen and stabbed his step-mother as she walked toward the den. There was an interval between the alleged confrontation in the kitchen and the time when Petitioner stabbed the victim. Petitioner later attempted to clean his hands and the floor, placed the murder weapon back on the knife block, rummaged through the victim's purse and removed money from the victim's wallet.

Next, Petitioner has failed to show that no rational trier of fact would find that Petitioner did not act under an extreme emotional disturbance. Petitioner argued at trial that he acted under an extreme emotional disturbance triggered by the victim finding Petitioner smoking cocaine and threatening to report Petitioner to his father and evict him from the family residence. However, evidence introduced at trial contradicted Petitioner's claim. For example, the victim's body was found in the den, and

not in the kitchen where the victim allegedly discovered Petitioner using cocaine; additionally, the evidence indicated that the victim had not been killed in the kitchen. After the incident, Petitioner was rational enough to clean the murder weapon, return it to the kitchen, and drive the route to his uncle's home.

Moreover, the prosecution introduced psychological evidence negating Petitioner's affirmative defense and undermining the defense expert's testimony. For example, Dr. Berger testified that Petitioner had a secure and loving relationship with his father, thus negating the claim that Petitioner feared the repercussions of the victim informing Petitioner's father of Petitioner's drug use. Evidence at trial also showed that the victim had not unreasonably imposed discipline on Petitioner, and in fact had rewarded Petitioner in the past for having been successfully tutored by the victim. The prosecution presented evidence indicating that the victim denied Petitioner's requests and imposed rules only as any other responsible parent would. Additionally, Dr. Berger testified that the crime scene evidence appeared to be more consistent with the effects of the drug use than extreme emotional disturbance. Dr. Berger based this conclusion on the appearance of a gap in time between the victim finding Petitioner using drugs and the homicide, and Petitioner's calculated actions after the stabbing. According to Dr. Berger, Petitioner's actions in sifting through the victim's pocketbook,

cleaning the crime scene, changing his clothes, and driving to his uncle's home were not consistent with someone who "should be drained of all emotion because he had an intense emotional outburst and response to overwhelming feelings that made him lose control. . . ." Tr. 1243-44.

Petitioner and Respondent each presented reputable expert witnesses with plausible conflicting views. The issue of extreme emotional disturbance was determined by the fact finder choosing which expert witness he found to be more credible. On a habeas petition, the fact-finder's "assessment of the crediblity of the witnesses may not be second-guessed." Copeland v. Walker, 258 F. Supp. 2d 105, 118 (E.D.N.Y. 2003) (citing Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994)). Here, the Court finds that there was sufficient evidence for a reasonable fact-finder to find that Petitioner committed the crime of Murder in the Second Degree, and for a fact-finder to reject Petitioner's affirmative defense of extreme emotional disturbance.

B. Petitioner's Claim Regarding Dr. Berger's Testimony

Petitioner claims that the trial court improperly allowed the prosecution's witness, Dr. Berger, to provide an opinion concerning Petitioner's credibility and to assess the crime scene. According to Petitioner, Dr. Berger was not qualified to render such an opinion. On appeal, Petitioner similarly argued that Dr. Berger was not qualified to give his theory about how the crime was

committed. The appellate division summarily denied this argument, finding that it was "without merit." People v. Venezia, 10 A.D.3d 736 (N.Y. App. Div. 2d Dep't 2004)

The admissibility of an expert's testimony as to a particular point is generally deferred to the sound discretion of the trial court. Reid v. Giambruno, No. 03-CV-0250, 2007 WL 3232497, at *17 (W.D.N.Y. Oct. 31, 2007) (citations omitted). To prevail on his claim, Petitioner must show that the evidentiary error was "so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985). "The standard [is] . . . whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. at 19.

Dr. Berger testified as to a material issue during the trial: whether Petitioner suffered from an extreme emotional disturbance. The Court finds that Dr. Berger's testimony was relevant on this point, and thus the trial court was within its discretion in designating Dr. Berger as an expert on this issue.

The Court rejects Petitioner's claim that the trial court improperly permitted Dr. Berger to give "expert" testimony regarding the crime scene. A review of the record reveals that the trial court did not, in fact, accept Dr. Berger's testimony on this

13

issue as expert testimony. The trial judge stated "I will allow [Dr. Berger's testimony regarding the crime scene evidence] clearly because he is giving his opinion not as an expert but as a layman." (Tr. 1229). When Petitioner continued to argue this point, the trial court judge stated, "I am not accepting it as an expert, I am telling you that on the record." Id.

To the extent that Petitioner objects to the trial judge's acceptance of Dr. Berger's testimony as a layperson, the Court finds that this evidentiary issue does not warrant habeas corpus relief. At the outset, "[a]s a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court." Palmer v. Marshall, No. 07-CV-5917, 2009 U.S. Dist. LEXIS 939, at *9 (S.D.N.Y. Jan. 8, 2009) (quoting People v. Williams, 97 N.Y.2d 735, 736, 769 N.E.2d 343, 742 N.Y.S.2d 597 (2002)). In any event, Petitioner has not shown that any alleged "error was so pervasive as to have denied him a fundamentally fair trial." Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985). Thus, the Court rejects Petitioner's claim that the admission of Dr. Berger's testimony impermissibly infected Petitioner's trial.

C. Excessive Sentence

Petitioner argues that his sentence of eighteen years to life for his second-degree murder conviction was harsh and excessive. The Court finds that the Appellate Division did not err

or unreasonably apply federal law in rejecting Petitioner's excessive sentence claim on appeal.

It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Thomas v. Senkowski, 968 F. Supp. 953, 956-57 (E.D.N.Y. 1997) (dismissing excessive sentence claim where the petitioner's sentence fell within the range prescribed by state law); Gonzalez v. Travis, 172 F. Supp. 2d 448, 457 (S.D.N.Y. 2001) (finding excessive sentence claim not cognizable for habeas review where sentence was within statutory range); McCalvin v. Senkowski, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas review unless the sentence imposed falls outside the range prescribed by state law.").

Petitioner was convicted of murder in the second degree, a class A-I felony according to New York Penal Law § 125.25. At the time of Petitioner's sentencing, the minimum sentence for a class A-I felony was a term of incarceration of fifteen years to life and the maximum was an indeterminate term of incarceration of twenty-five years to life. Petitioner received a sentence of eighteen years of incarceration to life imprisonment, which falls within New York state law limits. Since the trial court was within its discretion to impose this sentence, the Petitioner's harsh and

15

excessive sentence claim is dismissed for failure to raise a federal constitutional claim.

III. A Certificate of Appealability is Denied

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
December  7 , 2009